UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**ALAN RHOADS**,

        *Plaintiff*,

v.

**CITY OF ATLANTIC CITY et al.**,

        *Defendants*.

No. 25-cv-04477

**OPINION**

**APPEARANCES:**

**Alan Gregory Rhoads II**
101 Barr Avenue
Linwood, NJ 08221

    *Pro Se.*

**John Charles Hegarty**
Jasinski, P.C.
308 South New York Road, Suite B
Galloway, NJ 08205

    *On behalf of Defendants City of Atlantic City, Andrew Kramer, Thomas Gleghorn, and Samm D'Amore.*

**Tracey S. Cosby**
134 Evergreen Place, Suite 301
East Orange, NJ 07018

**Monika Emara**
Tracey S. Crosby
134 Evergreen Place, Suite 301
East Orange, NJ 07018

    *On behalf of Defendant Mayor Marty Small.*

**O'HEARN, District Judge.**

**THIS MATTER** comes before the Court on Plaintiff Alan Rhoads' Motion for Preliminary Injunction, (ECF No. 10), as well as Defendants City of Atlantic City, Andrew Kramer, Samm D'Amore, and Thomas Gleghorn (collectively the "Skate Zone Defendants") and Defendant Mayor Marty Small's separate Motions to Dismiss, (ECF Nos. 20, 22), Plaintiff's *pro se* Complaint, (ECF No. 1), for failure to state a claim.[1] The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Plaintiff's Motion is **DENIED** and Defendants' Motions are **GRANTED**.

## I.     BACKGROUND

The following facts are taken from Plaintiff's Complaint which the Court accepts as true for purposes of this motion.

Plaintiff Alan Rhoads is the former head coach of Stockton University's Men's Ice Hockey Team. (Compl., ECF No. 1 at ¶ 7). He also engaged in various forms of advocacy relating to the Skate Zone, a public skating facility operated by the City of Atlantic City. (*Id.* at ¶¶ 24, 48). This included participating in meetings of the South Jersey Ice & Athletic Center Association ("SJIAC"), a nonprofit. (*Id.* at ¶ 16).

---

[1] A *pro se* plaintiff's complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Cason v. Middlesex Cnty. Prosecutors' Off.*, No. 18-2101, 2022 WL 2871195, at *3 (D.N.J. July 21, 2022) (quoting *Montgomery v. Pinchak*, 294 F.3d 492, 500 (3d Cir. 2002)). Notwithstanding the Court's liberal interpretation, a complaint "may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (citation omitted).

On October 24, 2024, Rhoads and several others, including James O'Donnell, Kenneth Cleveland, and Hugh Turner, were attending a SJIAC meeting at the Skate Zone. (Ex. C, ECF No. 1 at 19–22). Shortly after the meeting began, Defendant Thomas Gleghorn, allegedly an agent or employee of the City, (ECF No. 1 at ¶ 11), entered the room and said that Defendant D'Amore, the rink manager, wanted to speak with Rhoads. (Ex. C, ECF No. 1 at 19-22). When Rhoads attempted to place the call on speaker phone, Gleghorn initially refused and left the room. (*Id.*). After D'Amore agreed to speak with Rhoads via speaker phone, Gleghorn returned to the room shortly afterwards. (*Id.*).

D'Amore said that Rhoads "was always causing trouble at the rink" and that the SJIAC could not continue meeting in the room they were in because it was a rented space. (*Id.*). D'Amore also threatened to call the police if they did not vacate. (*Id.*). Rhoads and the others agreed to leave and continued the meeting in the Skate Zone lobby. (*Id.*). When attendees asked Gleghorn "what the issue was" he responded that "the problem was Mr. [Rhoads] and his postings and emails that were critical of [Gleghorn's] wife and the rink in general." (*Id.*). Gleghorn appeared agitated about Rhoads "smearing" his wife and yelled at Rhoads in the lobby. (*Id.*).

Two days later, on October 26, 2023, Rhoads was informed that he was banned from the Skate Zone. (*Id.* at ¶ 14). On November 21, 2023, Defendant Kramer, the City's Public Information Officer, responding to a press inquiry about Rhoads being banned, stated that Rhoads had "failed to comply with the Skate Zone's rules and regulations set forth by the City of Atlantic City, including holding a recent unauthorized meeting inside the city-owned facility." (Ex. B, ECF No.

3

1 at 17–18). Kramer said that this "was not an isolated incident" and that Stockton University officials previously had to "intervene in a matter" involving Rhoads and the city. (*Id.* at 18).

## II. PROCEDURAL HISTORY

Plaintiff filed his Complaint on May 16, 2025, bringing equal protection (Count I), procedural due process (Count II), substantive due process (Count III), and First Amendment retaliation claims (Count V) against all Defendants under 42 U.S.C. § 1983 and a defamation claim against Kramer (Count IV). (ECF No. 1 at 7–10). He then filed a Motion for Preliminary Injunction on July 7, 2025, seeking to restore his access to the Skate Zone. (ECF No. 10). Defendant Small and the Skate Zone Defendants filed briefs opposing the preliminary injunction on July 21, 2025 (ECF Nos. 18–19) and subsequently filed Motions to Dismiss for failure to state a claim under Rule 12(b)(6) on July 25, 2025, and August 4, 2025. (ECF Nos. 20, 22). Plaintiff filed a reply supporting his Motion for Preliminary Injunction on July 28, 2025. (ECF No. 21) and a brief opposing Defendants' Motions to Dismiss on August 19, 2025. (ECF No. 25). Defendants filed reply briefs on their Motions to Dismiss on August 26 and 28, 2025. (ECF Nos. 26–27).

## III. JURISDICTION

This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1331 and supplemental jurisdiction over the state-law defamation claim under 28 U.S.C. § 1367.

## IV. LEGAL STANDARD

### A. Preliminary Injunction

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions. FED. R. CIV. P. 65; *Vuitton v. White*, 945 F.2d 569, 573 (3d Cir. 1991).

4

Preliminary injunctive relief is "an extraordinary remedy" and "should be granted only in limited circumstances." *AT&T v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–1427 (3d Cir. 1994) (quoting *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)). To obtain relief, the moving party must show: (1) a likelihood of success on the merits; (2) they will suffer irreparable harm if the injunction is denied; (3) the balance of the equities favors them; and (4) such relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where, as here, Defendants are government entities or officials sued in their official capacities, the balance of equities and the public interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

While courts must balance all four factors, *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982), this Circuit has placed significant weight "on the probability of irreparable harm and the likelihood of success on the merits" factors. *FM 103.1, Inc. v. Universal Broad.*, 929 F. Supp. 187, 193 (D.N.J. 1996) (quoting *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990)). A court should only issue an injunction "if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *AT&T*, 42 F.3d at 1427 (citation omitted).

### B. Motion to Dismiss

To state a claim, a complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although "short and plain," this statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). A "plaintiff's

5

obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (cleaned up). Rather, a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Id.* at 570.

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept the complaint's well-pleaded allegations and all reasonable inferences drawn from them as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). Through this lens, the court then conducts a three-step analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Next, the court should identify and disregard those allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Malleus*, 641 F.3d at 563 (quoting *Iqbal*, 556 U.S. at 679). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). The court may only consider the facts alleged in the pleadings, any attached exhibits, and any matters of judicial notice. *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

If any other matters outside the pleadings are presented and the court does not exclude them, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. FED. R. CIV. P. 12(d).[2]

## V.     DISCUSSION

### A.  Preliminary Injunction

The Court first finds that Plaintiff cannot show that he will suffer irreparable harm if an injunction is denied because he has waited more than a year before seeking relief. Here, the events at issue took place in October 2023, roughly eighteen months before Plaintiff filed his Complaint in May 2025. (ECF No. 1). Such delay "knocks the bottom out of any claim of immediate and irreparable harm." *N.J. Staffing All. v. Fais*, 751 F. Supp. 3d 419, 424 (D.N.J. 2024) (quoting *Pharmacia Corp. v. Alcon Lab'ys, Inc.*, 201 F. Supp. 2d 335, 383–84 (D.N.J. 2002) (denying preliminary injunction when plaintiffs waited more than a year). Preliminary injunctions are "generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights." *Lanin v. Borough of Tenafly*, 515 F. App'x 114, 117–18 (3d Cir. 2013) (citation omitted). Thus, "[d]elay in seeking enforcement of those rights … tends to indicate at least a reduced need for such drastic, speedy action." *Id.* at 118 (citation omitted). Accordingly, the Court

---

[2] In this case, Plaintiff has pleaded additional facts and attached additional exhibits in multiple filings, including his Motion for Preliminary Injunction, (ECF No. 10), his reply in support of the same, (ECF No. 21), and his brief opposing Defendants' Motions to Dismiss, (ECF No. 25). Much of the factual assertions contained therein are not found in Plaintiff's Complaint. Thus, the Court cannot consider these facts for purposes of the Motion to Dismiss.

finds that Plaintiff has failed to show irreparable harm, one of the two most important factors in deciding whether to grant an injunction.

In the alternative, for the reasons discussed below in the context of Defendants' Motions to Dismiss, the Court also finds that Plaintiff cannot show a likelihood of success on the merits, the second critical factor in granting a preliminary injunction.

### B. Motions to Dismiss

As a threshold matter, in reviewing Plaintiff's Complaint, the Court finds it difficult to determine which claims are brought against which Defendants. "Careful pleading in civil rights cases is not a matter of etiquette or housekeeping; it is necessary to provide defendants with notice of the claims asserted against them and the grounds upon which each claim rests so that they can properly frame an answer." *Foulke v. Twp. of Cherry Hill*, No. 23-2543, 2024 WL 3568841, at *12 (D.N.J. July 29, 2024). Thus, a "shotgun" or "group" pleading that "fails to specify which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against" is impermissible under Rule 8. *Id.* at *7 (citation omitted). That is precisely the case here. For instance, the Complaint alleges that Plaintiff was "abruptly informed that he was banned" from the Skate Zone, (ECF No. 1 at ¶ 14), but does not state by whom.[3] Thus, while Plaintiff may be able to state a claim against some Defendants based on the theories he advances,

---

[3] In his Motion for Preliminary Injunction, Plaintiff alleges that he was "informed by a university official that the Atlantic City Mayor's office had directed that Plaintiff was no longer permitted on the Skatezone premises." (ECF No. 10-1 at 2). However, as explained above, because this is not pleaded in the Complaint, the Court cannot consider this for purposes of the Motion to Dismiss.

the current Complaint lacks the factual specificity required by Rule 8 to enable the Court to perform the necessary factual and legal analysis.

The Court also finds that all the claims against Defendants in their official capacities are duplicative of the claims against Defendant Atlantic City. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (citation omitted)). Therefore, the Court will dismiss all the official-capacity claims against Defendants Small, Kramer, D'Amore, and Gleghorn with prejudice.

### 1. Claims Against Mayor Small

Defendant Small argues that the Complaint fails to state a claim against him. (*See* Small Mot. to Dismiss, ECF No. 20-1 at 6–8). The Court agrees.

To state a claim under § 1983, Plaintiff must plead facts that demonstrate the mayor's personal involvement in the alleged violation, which can be shown through "allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Here, Plaintiff alleges only that "[u]pon information and belief, [Small]

9

was aware of and approved the retaliatory and discriminatory actions against Plaintiff." (Compl., ECF No. 1 at ¶ 9). This conclusory allegation is insufficient to plausibly state a claim.

Therefore, the Court will grant Defendant Small's Motion and dismiss all claims against him without prejudice.

*2. Defamation*

Defendants argue that Plaintiff's defamation claim is time-barred by New Jersey's statute of limitations. (*See* Small Mot. to Dismiss, ECF No. 20-1 at 9–11; Skate Zone Defs.' Mot. to Dismiss, ECF No. 22-1 at 20.) The Court agrees.[4]

Under New Jersey law, "[e]very action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander." N.J. STAT. ANN. § 2A:14-3. This statute of limitations is strictly construed, and the discovery rule is inapplicable. *McGillvary v. Scutari*, No. 23-22605, 2025 WL 417061, at *7 (D.N.J. Feb. 6, 2025).

---

[4] Liberally construing Plaintiff's *pro se* Complaint, (ECF No. 1 at 9), the Court assumes that he intended to bring a defamation claim under New Jersey law and therefore its statute of limitations applies. To the extent that he seeks to bring a defamation claim under § 1983, that is addressed below in the context of his procedural due process claim.

Here, the alleged defamatory statement was made on November 21, 2023. (Compl, ECF. No. 1 at ¶ 43). Plaintiff's Complaint was filed on May 16, 2025, well over a year after the alleged publication. Therefore, the Court will grant Defendants' motion and dismiss Count IV with prejudice.[5]

### 3. Procedural Due Process

Defendants argue that Plaintiff has failed to state a procedural due process claim in Count II. "To prevail on a procedural due process claim, a litigant must show (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law." *Burns v. Pa. Dep't of Corr.*, 544 F.3d 279, 285 (3d Cir. 2008) (citation omitted). Here, the Court finds that Plaintiff's claim fails at the first step because there is no protected interest implicated as a matter of law.

Plaintiff, relying on *Paul v. Davis*, 424 U.S. 693 (1976), alleges that Defendants deprived him of a "protected liberty interest in his reputation and professional standing by publicly accusing him of misconduct and banning him from a public facility without prior notice or any opportunity to be heard." (Compl., ECF No. 1 at ¶ 36–37). As Plaintiff appears to recognize, *Davis* itself holds that reputational damage alone cannot form the basis of a procedural due process claim. *See* 424 U.S. at 712. Instead, a Plaintiff must meet the so-called "stigma-plus" test and plead that the

---

[5] Generally, the statute of limitations is an affirmative defense and cannot be the basis for dismissal under Rule 12(b)(6). However, courts in this Circuit recognize an exception when "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations" and the bar is thus "apparent on the face of the complaint." *E.g.*, *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). That is the case here.

defamation "occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989) (citing *Davis*, 424 U.S. at 701–12). Liberally construing his *pro se* Complaint, the Court finds that Plaintiff has articulated two potential state law or Constitutional rights: 1) access to the Skate Zone and 2) his employment at Stockton University.[6] (Compl., ECF No. 1 at ¶ 36–37).

The Court first finds that Plaintiff does not have a protected liberty interest in accessing the Skate Zone under New Jersey law or the Constitution. In doing so, the Court is particularly persuaded by the Seventh Circuit's decision in *Brown v. City of Mich. City*, 462 F.3d 720 (7th Cir. 2006), which rejected a "stigma plus" procedural due process claim from a plaintiff who was banned from accessing city parks, and the Second Circuit's decision in *Williams v. Town of Greenburgh*, 535 F.3d 71 (2d Cir. 2008), which also considered a procedural due process claim over access to municipal facilities.[7] The Seventh Circuit held in *Brown* there that there was no unconditional right of access to the parks under state law in part because state law granted discretion to the Park Board to "set conditions on the public's entry to city parks and to regulate

---

[6] The Court takes judicial notice of the fact that Stockton University is a public university.

[7] Indeed, several courts, including some in this Circuit, have reached similar conclusions regarding access to public property. *See Zomerfeld v. Kingston Twp. Police*, No. 22-00237, 2023 WL 2657637, at *9 (M.D. Pa. Feb. 9, 2023), *R&R adopted*, 2023 WL 2652245 (M.D. Pa. Mar. 27, 2023) (citing *Warkevicz v. Berwick Area Sch. Dist.*, No. 15-01922, 2016 WL 3753108, at *4 (M.D. Pa. July 14, 2016) in rejecting a procedural due process claim over a ban from municipal property); *see also Peterson v. City of N. St. Paul*, No. 21-458, 2021 WL 5235092, at *3 (D. Minn. Nov. 10, 2021) (collecting decisions of other Circuits finding no protected interest in accessing public buildings).

the behavior required of its visitors." 462 F.3d at 731. Similarly, here, New Jersey law empowers all municipalities to "make, amend, repeal and enforce ordinances" to "[m]anage, regulate and control the finances and property, real and personal, of the municipality," N.J. STAT. ANN. § 40:48-1, and other ordinances they "may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants." *Id.* § 40:48-2. The broad powers granted to municipalities to regulate their property in the public interest belies any unconditional state-law right of access to city property, including the Skate Zone.

In *Williams*, the Second Circuit considered a procedural due process claim by a plaintiff who was banned from a town community center. 535 F.3d at 73–74. While the court acknowledged that there was a fundamental right to travel within a state, it held that this right did not create an additional right to *access* any property within a state. *See id.* at 75. Accordingly, the plaintiff's "expulsion and temporary exclusion from the Center did not deprive him of a liberty interest protected by the Due Process Clause of the Fourteenth Amendment." *Id.* at 76. The Court finds the same is true here with Plaintiff's access to the Skate Zone.

Turning to Plaintiff's employment, the Supreme Court did recognize in *Davis* that defamation by the government "in the course of the termination of employment" could be actionable under the Fourteenth Amendment. 424 U.S. at 710; *see also Hill v. Borough of Kutztown*, 455 F.3d 225, 238 (3d Cir. 2006) (holding that "a public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost"). But the Court agrees with

13

Defendants that Plaintiff has not pleaded any facts that show any connection between the alleged defamation and his termination from Stockton University. (*See* Skate Zone Defs.' Mot. to Dismiss, ECF No. 22-1, at 17–18).

Therefore, the Court will grant Defendants' motion and dismiss Count II without prejudice.

### 4. Substantive Due Process

To bring a substantive due process claim under § 1983, Plaintiff must show "(1) the particular interest at issue is protected by the Fourteenth Amendment, and (2) the government's deprivation of that protected interest shocks the conscience." *Connection Training Servs. v. City of Philadelphia*, 358 F. App'x 315, 319 (3d Cir. 2009) (citations omitted). Importantly, "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000) (citation omitted). Thus, while termination from public employment can give rise to a procedural due process claim, it cannot sustain a substantive due process one. *See Judge v. Shikellamy Sch. Dist.*, 135 F. Supp. 3d 284, 295–96 (M.D. Pa. 2015), *aff'd,* 905 F.3d 122 (3d Cir. 2018) (citing *Nicholas*, 227 F.3d at 143).

Here, Plaintiff alleges that he was deprived of his "recognized liberty interest in accessing public facilities and participating in civic life." (Compl., ECF No. 1 at ¶ 41). For the reasons explained above, the Court finds there is no protected liberty interest in accessing public facilities under the Fourteenth Amendment. And, even if Plaintiff were to allege a connection to his termination from public employment, that is similarly unprotected by substantive due process.

Thus, his claim fails at the first step of the analysis and the Court need not consider whether the alleged deprivation shocks the conscience.

Therefore, the Court will grant Defendants' motion and dismiss Count III with prejudice.

### 5. *Equal Protection*

To prevail on his equal protection claim, Plaintiff must show that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill*, 455 F.3d at 239. "Persons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects." *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (internal quotation marks omitted) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

Here, Plaintiff alleges that "others who participated in comparable planning meetings or advocacy" at the Skate Zone "were not banned, disciplined, or defamed," while he was. (Compl., ECF. No. 1 at ¶ 31). Defendants counter by arguing that Plaintiff's behavior was different from that of the other attendees. (Skate Zone Defs.' Mot. to Dismiss, ECF No. 22-1 at 11–12.) At bottom, this is a factual dispute over whether Plaintiff was similarly situated to the other attendees that ordinarily would preclude dismissal at this stage.

However, as noted above, Plaintiff's Complaint is unclear as to which Defendants are responsible for the alleged violation. The Complaint does not allege who made, or even communicated, the decision to ban Plaintiff from the Skate Zone or plead facts that indicate that Defendants conspired with each other. Thus, while Plaintiff may theoretically be able to plead

facts that state a claim under the Equal Protection Clause, as currently pleaded, the Complaint fails to do so.

Therefore, the Court will grant Defendant's motion and dismiss Count I without prejudice.

*6. First Amendment Retaliation*

To bring a First Amendment retaliation claim, the plaintiff "must show (1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Here, Plaintiff alleges that he engaged in protected activity under the First Amendment, "including public criticism of the City's management of the Skatezone, a widely supported public petition, civic engagement through a nonprofit, communication with local and state officials, and media advocacy on matters of public concern." (Compl., ECF No. 1 at ¶ 48). He alleges that, because of this activity, he was banned from the facility. (*Id.* at ¶¶ 50–51). Liberally construing his *pro se* Complaint, the Court finds that this is sufficient to satisfy the first two elements of a First Amendment retaliation claim.

Finally, to "establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *DeFlaminis*, 480 F.3d at 267. Alternatively, a plaintiff "must show that from the evidence gleaned

from the record as a whole the trier of the fact should infer causation." *Id.* (internal quotation marks omitted) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

Defendants argue that Plaintiff has failed to allege facts to show temporal proximity or a pattern of antagonism. (Defs.' Mot. to Dismiss, ECF No. 22-1 at 10–11). But Plaintiff has attached to his Complaint purported statements of other attendees of the October 2023 SJIAC meeting at the Skate Zone that precipitated his ban, including one from Kenneth Cleveland, who states that Defendant Gleghorn was "asked what the issue was" and "responded that the problem was [Plaintiff] Rhodes and his postings and emails that were critical of his wife and the *rink in general*." (Compl., ECF No. 1 at 21) (emphasis added). Another statement from James O'Donnell states that Defendant D'Amore said that Rhoads "was always causing trouble at the rink." (*Id.* at 20). These statements might show evidence of retaliatory animus and therefore a causal connection between his protected activity (criticism of the rink) and his ban from the rink.[8]

However, as with the equal protection claim, the Complaint does not allege which Defendant took the alleged retaliatory action. Although these statements might be evidence of causation, the Complaint does not allege that Gleghorn or D'Amore was the decisionmaker.

---

[8] While these statements were not made under oath and are unsigned, the Court accepts them as true for purposes of this motion. *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018) ("In determining whether [the plaintiff's] claim is plausible, we consider not only her complaint, but also the exhibits she attached to it … .")

17

Indeed, no decisionmaker is identified. Thus, no causal connection between the retaliatory action and Plaintiff's protected activity can be drawn from the Complaint and this claim must also fail.

Therefore, the Court will grant Defendants' motion and dismiss Count V without prejudice.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction, (ECF No. 10), is **DENIED**. Defendants' Motions to Dismiss (ECF Nos. 20, 22) are **GRANTED.** Counts III and IV of Plaintiff's Complaint, (ECF No. 1), and all official-capacity claims against Defendants Small, Kramer, D'Amore, and Gleghorn are **DISMISSED WITH PREJUDICE**. Counts I, II, and V are **DISMISSED WITHOUT PREJUDICE.** An appropriate Order accompanies this Opinion.

*Christine P. O'Hearn*
**CHRISTINE P. O'HEARN**
**United States District Judge**